1

2

3

4

5

UNITED STATES DISTRICT COURT

6

EASTERN DISTRICT OF WASHINGTON

7   INDUSTRIAL SYSTEMS &
    FABRICATION, INC., a Washington          NO:  2:14-CV-46-RMP
8   corporation,

9                           Plaintiff,       ORDER REGARDING DISCOVERY
                                             MOTIONS
         v.
10
    WESTERN NATIONAL
11  ASSURANCE COMPANY, a
    Minnesota company,
12
                            Defendant.
13

14       Before the Court are several motions related to discovery: Plaintiff's Motion

15  to Compel, ECF No. 47; Defendant's Motion to Compel Written and Deposition

16  Testimony, ECF No. 49; Plaintiff's Motion for Protective Order, ECF No. 64; and

17  Defendant's Motion to Expedite and for Leave to File Supplemental

18  Memorandum, ECF No. 69.

19       The Court held a telephonic hearing on these motions on October 24, 2014.

20  Adam Chambers represented Plaintiff.  Dana Ferestien and Bridget Schuster

ORDER REGARDING DISCOVERY MOTIONS ~ 1

1  appeared on behalf of Defendant.  The Court has considered all of the relevant

2  filings and the parties' oral arguments.  The Court is fully informed.  This Order

3  memorializes and supplements the Court's oral rulings.

4          The background of this action is discussed in the Court's Order Denying

5  Motion to Quash, ECF No. 46, and will not be repeated here.  The Court considers

6  each motion in turn.

7      **1.  Plaintiff's Motion to Compel**

8          Plaintiff moves for an order compelling Defendant, Plaintiff's insurer, to

9  provide discovery documents that Defendant claims are protected by the attorney-

10  client privilege.  ECF No. 47.  Defendant submitted a privilege log, claiming that

11  multiple documents are subject to the attorney-client privilege or other protections.

12  ECF No. 54-1.  The parties dispute whether the attorney-client privilege applies in

13  light of a recent decision of the Washington State Supreme Court, *Cedell v.*

14  *Farmers Insurance Company of Washington*, 176 Wn.2d 686, 697 (2013).

15          In *Cedell*, the court attempted to balance the tension between the attorney-

16  client privilege and an insured's need for adequate discovery from an insurer in

17  order to pursue an insurance bad faith claim.  176 Wn. 2d at 698.  Recognizing that

18  an insured must have access to an insurer's file to discover facts in support of a bad

19  faith claim, the court found that permitting "a blanket privilege in insurance bad

20  faith claims because of the participation of lawyers hired or employed by insurers

1    would unreasonably obstruct discovery of meritorious claims and conceal

2    unwarranted practices." *Id.* at 696-97.  Therefore, the court adopted "the

3    presumption that there is no attorney-client privilege relevant between the insured

4    and the insurer in the claims adjusting process, and that the attorney-client and

5    work product privileges are generally not relevant." *Id.* at 698-99.

6           An insurer may rebut this presumption, however, "by showing its attorney

7    was not engaged in the quasi-fiduciary tasks of investigating and evaluating or

8    processing the claim, but instead in providing the insurer with counsel as to its own

9    potential liability; for example, whether or not coverage exists under the law." *Id.*

10   at 699.  If the insurer meets this showing, "[it] is entitled to an in camera review of

11   the claims file, and to the redaction of communications from counsel that reflected

12   the mental impressions of the attorney to the insurance company, unless those

13   mental impressions are directly at issue in its quasi-fiduciary responsibilities to its

14   insured." *Id.*

15          If an insurer successfully shows that the attorney-client privilege applies,

16   *Cedell* holds that the insured nevertheless may be entitled to allegedly protected

17   documents under the civil-fraud exception.  The *Cedell* court outlined the

18   following procedure for determining whether the civil-fraud exception applies:

19          First, upon a showing that a reasonable person would have a
            reasonable belief that an act of bad faith has occurred, the trial court
20          will perform an in camera review of the claimed privileged materials.
            Second, after in camera review and upon a finding there is a

1    foundation to permit a claim of bad faith to proceed, the attorney-
2    client privilege shall be deemed to be waived.

*Id.* at 700.

3        *Cedell* is applied somewhat differently in federal court than in state

4    court, as the parties agree.  *See* ECF Nos. 53 at 4-5; 57 at 3 n.2.  "Under the

5    *Erie* doctrine, a federal court sitting in diversity generally applies the

6    substantive law of the forum state, but federal procedural law."  *MKB*

7    *Constructors v. Am. Zurich Ins. Co.*, C-13-0611-JLR, 2014 WL 2526901, at

8    *5 (W.D. Wash. May 27, 2014) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S.

9    64, 78-79 (1939)).  Accordingly, while the scope of the attorney-client

10   privilege, as described in *Cedell*, is a matter of substantive law that applies

11   in this Court, *Cedell*'s detailed process of in camera review is a matter of

12   procedural law.  *Id.* at *6-7.  Pursuant to federal law, the Court exercises its

13   discretion in determining whether to conduct in camera review.  *Id.* at *7;

14   *see also Carolina Cas. Ins. Co. v. Omeros Corp.*, C-12-287-RAJ, 2013 WL

15   1561963, at *3 (W.D. Wash. Apr. 12, 2013) ("exercise[ing] its authority to

16   order an in camera review" without suggesting that the process is mandatory

17   in federal court).

18       Another difference regarding the application of *Cedell* in federal court, and

19   again due to the *Erie* doctrine, is that while the attorney-client privilege is a

20   substantive legal issue, the work product doctrine is a matter of procedural rule.

ORDER REGARDING DISCOVERY MOTIONS ~ 4

1  *MKB Constructors*, 2014 WL 2526901, at *8; *see also* Fed. R. Civ. P. 26(b)(3).

2  Therefore, *Cedell*'s work product analysis does not apply here.

3    Parsing only the attorney-client privilege law from *Cedell* is complicated by

4  the fact that *Cedell* at times does not differentiate between that privilege and the

5  separate work product doctrine.  *See MKB Constructors*, WL 2526901, at *4 n.3

6  (noting that *Cedell* "often conflates the two in its analysis or uses the terms nearly

7  interchangeably"); *Philadelphia Indem. Ins. Co. v. Olympia Early Learning Ctr.*,

8  C-12-5759-RBL, 2013 WL 3338503, at *3 (W.D. Wash. July 2, 2013).

9    The Court finds that Defendant has met its burden to show that its attorneys

10  were not engaged in the quasi-fiduciary tasks of the insurer, unlike the attorney in

11  *Cedell*.  The attorney in that case was hired "to do more than give legal opinions."

12  *Cedell*, 176 Wn.2d at 701.  Rather, he assisted in the investigation by taking sworn

13  statements from the insured and from a witness, assisted in adjusting the claim by

14  negotiating with the insured, and threatened denial of coverage if a "one time

15  offer" was not accepted.  *Id.*  In short, "[w]hile [the attorney] may have advised

16  [the insurer] as to the law and strategy, he also performed the functions of

17  investigating, evaluating, negotiating, and processing the claim."  *Id.*

18    Here, Defendant submitted declarations from its litigation counsel and from

19  its coverage counsel, both of whom declare under penalty of perjury that they did

20  not engage in any quasi-fiduciary activities on Defendant's behalf.  ECF Nos. 54,

ORDER REGARDING DISCOVERY MOTIONS ~ 5

56.  Indeed, Defendant's coverage counsel, who worked for Defendant before

litigation commenced and who presumably would have been more likely to have

played a quasi-fiduciary role, specifies that he did not examine any witnesses under

oath and that he "had no communications with adjusters, investigators, consultants,

experts or appraisers."  ECF No. 56 at 2.

As evidence that Defendant's attorneys acted as quasi-fiduciaries, Plaintiff

notes that on multiple occasions Defendant communicated with Plaintiff about its

claims shortly after it apparently communicated with its counsel.  *See* ECF No. 57

at 4-7.  However, such communications also would be consistent with a client

seeking legal counsel from its attorney, which is not necessarily subject to

disclosure.  *See Cedell*, 176 Wn.2d at 699 (an insurer may overcome the

presumption of discoverability by showing that its attorney was engaged "in

providing the insurer with counsel as to its own potential liability").

Plaintiff also contends that, even if Defendant overcomes the *Cedell*

presumption, it is still entitled to communications that reflect the mental

impressions of Defendant's attorneys if those impressions are "directly at issue" in

the insurer's quasi-fiduciary duty.  *Id.* at 699 (citing *Escalante v. Sentry Ins.*, 49

Wn. App. 375 (1987)).  However, a review of *Cedell* indicates that this statement

pertains to the work product doctrine.  The relevant section of *Escalante*, the

Washington Court of Appeals case on which the Supreme Court relied for finding

this exception for mental impressions that are directly at issue, concerned the work product doctrine. *See Escalante*, 49 Wn. App. at 396 ("address[ing] one other issue raised by the parties regarding the work product doctrine; i.e. the discoverability, under CR 26(b)(3), of mental impressions, conclusions, opinions, etc. of an attorney or other representative of [the insurer]"). Moreover, both the federal and state rules governing the work product doctrine use the term "mental impressions" to describe material that must be protected from disclosure even if an opponent overcomes an assertion that documents are protected work product, indicating that *Cedell* was discussing an exception to that doctrine. *See* Fed. R. Civ. P. 26(b)(3)(B) *and* Wash. Super. Ct. Civ. R. 26(b)(4). As discussed above, the work product doctrine is a matter of procedural rather than substantive law, so *Cedell*'s holdings regarding the work product doctrine do not apply in federal court.[1]

---

[1] The Court notes that at least two federal courts apparently have presumed that *Cedell*'s holding regarding mental impressions applies only in the context of the work product doctrine. *See MKB Constructors*, 2014 WL 2526901, at *9 (finding that an insurer met *Cedell*'s substantive requirements for the attorney-client privilege without considering whether an attorney's mental impressions were directly at issue in the performance of the insurer's quasi-fiduciary tasks) *and Olympia Early Learning Ctr.*, 2013 WL 3338503, at *4 (summarizing that *Cedell* allows an insured to discover an insurer's claim file "[i]f the *in camera* review reveals that the attorney's *opinion work product* is 'directly at issue in [the insurer's] quasi-fiduciary responsibilities to its insured'") (second emphasis added). *But see Johnson v. Allstate Prop. & Cas. Ins. Co.*, C-14-5064-KLS, 2014 WL 4293967, at *4 (W.D. Wash. Aug. 29, 2014) (discussing *Cedell*'s "directly at issue" language in a section regarding attorney-client privilege) *and Stewart Title Guar. Co. v. Credit Suisse*, 1:11-CV-227-BLW, 2013 WL 1385264, at *6 (D. Idaho Apr. 3, 2013) (same).

ORDER REGARDING DISCOVERY MOTIONS ~ 7

1    Based on the evidence submitted by the parties, the Court finds that

2    Defendant's attorneys did not engage in the quasi-fiduciary tasks that *Cedell*

3    identifies.

4    Defendant next contends that the attorney-client privilege is vitiated under

5    the civil fraud exception.  *See Cedell*, 176 Wn.2d at 699-700.  Plaintiff failed to

6    raise this issue in its motion.  *See* ECF No. 47.  Only after Defendant explained

7    that Plaintiff had not argued that the civil fraud exception applies, ECF No. 53 at 1,

8    did Plaintiff argue and submit evidence in support of the civil fraud exception,

9    ECF No. 57 at 9-10.

10    The Court is not obliged to consider arguments first offered in a reply brief.

11    *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007).  Because Defendant has not

12    been given an appropriate opportunity to respond to Plaintiff's untimely

13    submission, the Court declines to consider whether Plaintiff has met *Cedell*'s

14    standard for the civil-fraud exception at this time.

15    Accordingly, Plaintiff's Motion to Compel is denied.

16    **2.  Defendant's Motion to Compel Written and Deposition Testimony**

17    Defendant moves to compel Plaintiff to supplement its responses to

18    interrogatories, to comply with the Court's order denying a motion to quash a

19

20

1    subpoena duces tecum, and to produce its witnesses for deposition.[2]  ECF No. 49.

2    Defendant also requests the Court to appoint a discovery master and to consider

3    awarding fees.

4         Defendant claims that Plaintiff's responses to interrogatories are deficient.

5    For example, in response to Defendant's Interrogatory No. 4, requesting Plaintiff

6    to state the facts and circumstances that support its building repairs and business

7    interruption claims, Plaintiff objected and directed that "in lieu of a narrative

8    response, see the documents previously produced by Industrial Systems regarding

9    its insurance claims and the factual basis set forth in the Complaint."  ECF No. 50-

10   2 at 4.  Plaintiff then referred to its response to Interrogatory No. 4 instead of

11   substantively answering multiple other interrogatories.  ECF No. 50-2 at 4-6.

12        The Court finds that Plaintiff's answers to the interrogatories are inadequate.

13   Plaintiff's suggestion that Defendant refer to the complaint and to documents

14   presumably produced in discovery is unhelpful.  *See* 8B CHARLES ALAN WRIGHT

15   ET AL., FEDERAL PRACTICE AND PROCEDURE § 2177 (3d ed.) ("Simply referring to

16   pleadings or other discovery is frequently found insufficient.").

17        Plaintiff argues that its responses comply with Rule 33(d), which permits a

18   party to produce business records in response to interrogatories.  *See* Fed. R. Civ.

19   P. 33(d).  However, the rule requires the answering party to specify "the records

20

---

[2] The parties' dispute regarding deposition scheduling is discussed below, in regard to a later filing.

1  that must be reviewed, in sufficient detail to enable the interrogating party to locate

2  and identify them as readily as the responding party could . . . ." Fed. R. Civ. P.

3  33(d)(1).  Plaintiff's general reference to "the documents previously produced"

4  falls short of this requirement.

5       Plaintiff is directed to respond in detail to all of Defendant's interrogatories

6  by **November 7, 2014**.  The Court trusts that Defendant will communicate swiftly

7  about specific information that it needs, assuming that Plaintiff requires

8  clarification.

9       Next, Defendant claims that Plaintiff has failed to comply with the Court's

10  order requiring it to produce all documents from the Alex Sill N. Company ("Sill")

11  claim file and to supply a privilege log of all documents that Plaintiff alleged were

12  protected, ECF No. 46.  Documents and a privilege log were produced, but

13  Defendant states that a number of categories of documents are not reflected in the

14  materials produced.

15       However, Defendant has not provided evidence that anything actually has

16  been withheld.  At the hearing on this matter, counsel for Plaintiff stated that

17  although he does not represent Sill and is not responsible for its responses to a

18  subpoena duces tecum, he has verified with Sill that all responsive records have

19  been produced or recorded in the privilege log.  Plaintiff also indicated that it does

20  not possess any records responsive to the subpoena that have not been produced.

1    Based on Plaintiff's representations on the record, the Court assumes that Plaintiff

2    has disclosed everything responsive to date.

3        Defendant also requests the Court to appoint a discovery master, and

4    Plaintiff does not object.  Considering the contentious history of discovery in this

5    matter, the Court agrees that a discovery master could help resolve any future

6    disputes more expeditiously and economically than they are managed in motion

7    practice.  The parties will divide the fees evenly for a discovery master, who will

8    be permitted to reallocate the expense if either party unnecessarily delays

9    discovery.  The discovery master will be authorized to conduct in camera reviews

10   as he or she finds appropriate.  The Court declines to award sanctions at this time,

11   but the discovery master will have the authority to impose sanctions, should the

12   discovery master find it necessary to do so.

13       On or before **November 6, 2014**, the parties are ordered to **jointly**

14   recommend an attorney to serve as discovery master and to file a **jointly** proposed

15   order appointing a discovery master.  If the parties are unable to agree on a

16   discovery master, each party is ordered to submit the names of **two attorneys**

17   whom it recommends to serve as a discovery master.[3]

18       Defendant's Motion to Compel Written and Deposition Testimony is granted

19   in part and denied in part.

20   _____

[3] Defendant also challenges whether documents listed in the Sill privilege log are protected work product.  ECF No. 49 at 8-9.  The Court refers this issue to the discovery master.

ORDER REGARDING DISCOVERY MOTIONS ~ 11

### 3. Plaintiff's Motion for Protective Order

The parties have quarreled vigorously over the scheduling of depositions. The parties agreed (tentatively, at least) that depositions of Plaintiff's witnesses Jim Hamlin and Jason Hamlin would occur on November 25 and 26, 2014. *See* ECF No 65-1 at 2. Defense counsel later wrote that they were not available to conduct depositions at all during that week and requested to reschedule the depositions for an earlier date. ECF No. 65-2 at 1. Plaintiff responded that no earlier dates were available. ECF No. 65-3 at 1. Defendant argued that it could not delay the depositions of Plaintiff's witnesses later than the week when they originally were scheduled, and therefore Defendant issued notices of depositions for November 19, 2014, without Plaintiff's consent. ECF No. 65-4. Plaintiff requests the Court to issue a protective order, stopping the depositions from occurring on November 19, 2014, when Plaintiff's counsel will be participating in a hearing out-of-state. *See* ECF No. 65-6.

Rule 26(c) provides that, after a good faith attempt to confer, a party may obtain a protective order by establishing good cause "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." Fed. R. Civ. P. 26(c)(1). Plaintiff has certified that the parties attempted to confer on this matter, and the Court finds that Plaintiff has established good cause for a

protective order sparing it from complying with a deposition deadline that

Defendant unilaterally set.

Both parties also move for attorney fees, ECF Nos. 49 at 11; 64 at 6-7,

which the Court denies. In light of the conduct of both parties, the Court finds that

it would be unjust to grant either party's request for fees at this time. *See* Fed. R.

Civ. P. 37(a)(5)(A)(iii).

Plaintiff's Motion for Protective Order is granted in part and denied in part.

The parties shall stipulate to new deposition dates for Jim Hamlin and Jason

Hamlin. If necessary, the parties may move to extend discovery and ask for a new

trial date.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion to Compel, **ECF No. 47**, is **DENIED**.

2. Defendant's Motion to Compel Written and Deposition Testimony,

**ECF No. 49**, is **GRANTED IN PART AND DENIED IN PART**, as

described above.

3. Plaintiff's Motion for Protective Order, **ECF No. 64**, is **GRANTED**

**IN PART AND DENIED IN PART**, as described above.

/ / /

/ / /

/ / /

ORDER REGARDING DISCOVERY MOTIONS ~ 13

1      4.  Defendant's Motion to Expedite and Motion for Leave to File

2      Supplemental Memorandum, **ECF No. 69**, is **GRANTED**.

3          The District Court Clerk is directed to enter this Order and provide copies to

4  counsel.

5          **DATED** this 30th day of October 2014.

6

7                              _____*s/ Rosanna Malouf Peterson*_____
                                   ROSANNA MALOUF PETERSON
8                              Chief United States District Court Judge

9

10

11

12

13

14

15

16

17

18

19

20